RICHARD W. SMITH and WANDA J. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 10854-87
United States Tax Court
T.C. Memo 1990-311; 1990 Tax Ct. Memo LEXIS 329; 59 T.C.M. (CCH) 958; T.C.M. (RIA) 90311; June 21, 1990, Filed *329 Decision will be entered under Rule 155. Joel Drum, for the petitioners. Susan J. Adler, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency of $ 9,123 in petitioners' Federal income tax for 1983. After concessions, the only issue for decision is whether petitioner Richard W. Smith is entitled to deductions under section 162(a)(2) [1] for traveling expenses incurred while away from home. *330 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in Portsmouth, Ohio, at the time they filed their petition. Richard W. Smith (petitioner) is an instrument and calibration technician. His occupation involves the calibration, repair, and replacement of measuring instruments and gauges used in nuclear power facilities. From 1954 to 1979, petitioner was employed by Goodyear Atomic Corporation and worked at its Portsmouth, Ohio facility located approximately 18 miles from his home. As a result of a strike at Goodyear in 1979, he was unemployed for 8 months. Unable to find work in Portsmouth, petitioner accepted a job in October 1979 at a coal plant located in Steubenville, Ohio. While petitioner worked at the coal plant, petitioners lived in Steubenville and their adult daughter resided in their Portsmouth home. While living in Steubenville, petitioners continued to make the mortgage and utility payments on their Portsmouth home. Petitioner was initially advised that his employment at the coal plant would last for one year; however, *331 he remained employed at the coal plant until May 1981. After leaving the coal plant, petitioner was informed of a one-year position with the LaSalle County Nuclear Plant located near Joliet, Illinois. He worked there for 13 months and was laid off in July 1982. During this period of time, petitioners' daughter continued to reside at their Portsmouth home and petitioners continued to make the mortgage and utility payments. Petitioners returned to their home in Portsmouth in July 1982. While in Portsmouth, petitioner sent out resumes in search of employment; and as a result, he received an offer from A. R. Criscuolo and Associates, Inc. to work at the Waterford III nuclear plant (Waterford III) located in Taft, Louisiana. He began working at Waterford III in August 1982, having been advised that the job was to last from 6 to 12 months. Petitioner and his wife rented an unfurnished house in Luling, Louisiana, approximately 15 miles from Waterford III. Although the lease was for a one-year term, it allowed petitioners to terminate their tenancy if petitioner was laid off. Petitioners left their furniture in Portsmouth, and they acquired new furniture for the Luling rental house. *332 During March 1983, while petitioner was working at the Waterford III project, there was an announcement of impending layoffs. Because of the announcement, many workers accepted employment elsewhere, which caused an employment shortage at Waterford III. Consequently, petitioner was asked to work an additional period of approximately six months. Due to construction delays at Waterford III, some of which were attributable to safety concerns following the Three Mile Island incident, petitioner was requested to work for an additional period to last between six months to a year. During 1983, petitioners visited Ohio on three separate occasions; the combined length of these trips was approximately two weeks. In 1983, they paid Louisiana State income taxes, having last paid Ohio State income taxes in 1981. Petitioner kept an Ohio driver's license while working at the Waterford III plant. In March 1985, petitioner's employment at Waterford III was terminated. From August 1982 to March 1985, petitioner had been continuously employed at Waterford III. During this period of time, petitioners renewed their lease upon the original terms and conditions. Consequently, they were able to *333 terminate their lease as a result of petitioner's layoff. Upon leaving the Waterford III plant, petitioner returned to Portsmouth. In June 1985, he left Portsmouth for a three-month job in Florida at the Crystal River Power Plant. He discontinued working at the Crystal River facility in August 1985; and in October 1985, he began what was to be a three-month job at the River Bend Nuclear Power Plant in Baton Rouge, Louisiana. Petitioner was laid off from the River Bend facility within a month. For 1983, A. R. Criscuolo and Associates, Inc., issued petitioner a Form 1099-MISC, which he claims he never received, reflecting $ 21,738.13 in nonemployee compensation. After being contacted by the Internal Revenue Service concerning the Form 1099-MISC, petitioners filed an amended Federal income tax return for 1983 increasing their income for the amount reflected in the Form 1099-MISC and claiming additional deductions of $ 18,738 for employee business expenses. They paid an additional tax liability of $ 1,516 with the amended return, which amount was not reflected in respondent's statutory notice of deficiency. OPINION Petitioner contends that his expenses in 1983 while working *334 at Waterford III are deductible traveling expenses incurred while away from his "home" in Portsmouth, Ohio. He argues that his employment in Louisiana was temporary rather than indefinite. Respondent contends that petitioner did not have a tax "home" in Portsmouth, Ohio, to be away from in 1983 and that, in any event, his employment at Waterford III was indefinite rather than temporary in nature. We agree with respondent on both grounds. Section 162(a)(2) [2] allows a deduction for "traveling expenses * * * while away from home in the pursuit of a trade or business." To qualify for a deduction under this section, three conditions must be met: (1) The expenses must have been ordinary and necessary; (2) the expenses must have been incurred while "away from home"; and (3) the expenses must have been incurred in the pursuit of a trade or business. . *335 First, we consider whether petitioner was "away from home" at the time the claimed expenditures were incurred. It is well established that the taxpayer's home for purposes of section 162(a)(2) is the vicinity of his principal place of employment, and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. ; , affd. ; ; . An exception to this general rule is provided in , affd. per curiam . In Peurifoy, it was held that if a taxpayer can prove that his employment is temporary, his personal residence will be considered to be his tax home. When a taxpayer with a well-established tax home accepts temporary employment away from home, his living expenses may be deductible because it would not be reasonable for *336 him to move his home simply to be nearer to short-term employment. ;; . On the other hand, if the employment is indefinite, rather than temporary, the expenses are not deductible. ;. The obvious precondition to a taxpayer being "away from home" is that he have a home in the first instance. . In the context of section 162(a)(2), the taxpayer must incur substantial continuing living expenses at a permanent place of residence. . Such requirement is in accord with the purpose underlying section 162(a)(2), i.e., to mitigate the burden falling upon the taxpayer who, because of his business, must maintain two places of abode and thereby incur additional and duplicate living expenses. ; ; *337 . Here, we do not believe that Portsmouth, Ohio, was petitioner's tax home between August 1982 and March 1985. During that period of time, his contacts with Portsmouth were minimal. His job search efforts and actual employment attest to the lack of employment opportunities in the Portsmouth vicinity. Petitioners' retention of their Portsmouth home as a place for their adult daughter to reside, and for them to return to, is not sufficient to make Portsmouth their tax home. Cf. . The fact that petitioners made mortgage and utility payments on the Portsmouth home does not constitute the kind of duplicative living expenses which the "away from home" concept is designed to cover. Cf. ; . Accordingly, we find that petitioners did not have a "home" to be "away from" and therefore are not entitled to their claimed deductions under section 162(a)(2). Furthermore, we believe that petitioner's employment at Waterford III was indefinite rather than temporary. No *338 single element is determinative of the ultimate factual issue of temporariness; there are no rules of thumb, durational or otherwise, to distinguish temporary from indefinite employment. . However, several criteria are considered important in determining whether employment is indefinite as opposed to temporary. . These criteria are: (1) the expected duration of employment, (2) the size of the project, (3) the available supply of labor, and (4) the actual duration of employment. Applying these criteria to the facts of this case, we think petitioner's employment was indefinite. Petitioner seems to place great weight on the fact that the duration of his employment was never guaranteed; that he was not promised continued work; and that he was subject to layoff at any time. The fact that he had no assurance as to how long his job would last is not determinative as to the temporary nature of his employment. . Even if it is known that a particular *339 job may or will terminate at some future date, that job is not temporary if it is expected to last a substantial or indefinite period of time. ; Employment is considered to be indefinite, rather than temporary, unless termination within a fixed or short period of time can be foreseen. , affd. ; . Certainty of continued employment is not the test. The fact that petitioner could be laid off at any time merely shows that his employment was not permanent, but impermanence by itself does not make employment "temporary." , affg. a Memorandum Opinion of this Court. As to the size of the project, there is no doubt that the construction of a new nuclear plant is a major undertaking that requires a substantial duration. Moreover, regulatory standards and safety compliance measures further increased the amount of time needed before the plant was operational. *340 Petitioner did not present sufficient evidence from which we can accurately determine the available supply of labor. Given the fact that petitioner received several work period extensions, we are able to infer that his skills were demanded at Waterford III, which further supports the indefinite nature of his employment. Finally, petitioner worked at Waterford III continuously from August 1982 through March 1985, a period of approximately 31 months. Thus, the actual duration of his employment indicates that his employment was indefinite. Given the aforesaid conclusions, it is unnecessary for us to consider whether the claimed expenses have been fully substantiated. To reflect the foregoing and the concessions made by the parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
2. SEC. 162(a). IN GENERAL. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩